CHIEF JUSTICE TURNAGE
dissenting:
I respectfully dissent from the majority opinion reversing the conviction of Stephen Dale Crist. Crist was found guilty on March 26, 1991, by a Missoula County jury of sexual assault upon a nine-year-old girl, B.L., committed between November 15, 1989, and January 31, 1990.
*448 The majority opinion approves the admissibility of prior act testimony given at the trial by K.L., sister of B.L., that Crist sexually assaulted her in 1984 when K.L. was thirteen years old. Crist was not charged with this assault. I agree with the majority opinion’s holding that this testimony of a prior act was admissible and that the requirements of the “modified Just rule” with relation to this prior act had been satisfied.
The majority opinion, however, reverses the conviction based upon testimony of K.L., that she was subjected to three other prior acts of Crist.
It must be noted that the three other prior acts, which the majority holds to be inadmissible and reversible error, all occurred within a short span of time before the prior act of sexual assault by Crist upon K.L. which the majority held to be admissible.
The testimony of K.L. relating to these three other prior acts, taken from the trial transcript of the direct testimony of K.L., is as follows:
Q. Were there any other incidents involving the Defendant that you can recall?
A. Yeah, I went over to the house one night, and I was sitting there and on the floor watching TV, and I don’t remember how this started, but Steve said something like — yeah, right in front of Collette he said, ‘Yeah, I’m going to —” I’m stumped. I can’t remember.
He goes, “I’m going to get her drunk and take advantage of her,” and Collette was sitting right there, and they just kind of laughed about it, and they go, “Well, we’re going to bed now,” and I said, “Okay.”
And I was just watching TV. So Steve came back out a few minutes later, and he brought this nightgown out, and he goes, “Come here,” and he grabs me and takes me into the bathroom, and he said, “Put this on,” and I went, “No.” Then he walked out and he got mad, and that was the end of it.
Q. Did anything else happen, either before or after this, involving the Defendant?
A. What do you mean?
Q. Did he ever pick you up at Sentinel High School or Hellgate High School?
A. Yes.
Q. Can you explain to the jury about that incident?
A. Well, I was at work, and I was at Human Resources, and I called up because I wanted to spend the day with [B.L.], my sister. So I *449 called up, and I said, “Well, Steve, will you bring me over so I can see [B.L.]?” And he said, “Sure.” He said, “There’s something I want you to do, and I will pay you for it.” And I said, “Okay.” He goes, ‘Well, I will meet you at Hellgate.” I did [sic], “Okay.”
So he picked me up at Hellgate, and when I got in the truck, I go, Well, what was it you wanted me to do?” He goes, “I’ll just tell you later,” and I go, “What, clean the house, clean dishes, some sewing?” And he goes, “No,” and I go “Um.” So he said, “I’ll tell you when we get back to the house,” and I go, “Okay.”
So when we get back to the house, he was cleaning out the camper, either to go camping or just got back, and after that he goes, Well, why don’t you come in here and sit and talk to me,” and I said, “Okay.”
Q. In where?
A. In the camper — because we never had any problems before this. We had always gotten along okay.
Q. So this incident with the camper was before he touched you?
A. This was before anything started. And so we were sitting in the camper just talking and everything. He said, “I want to show you something,” and he said, “I will be right back.” So he went in the house, came back in the camper, and he threw a magazine that was covered up on the table, and he went back in and he goes, “I’ll be back in a minute.” And so I uncovered it, and it was like a Penthouse or something like that.
Q. Then what happened?
A. He came back in and he goes, “What do you think?” [I] go, “What do you mean, what do I think?” And I went, “I don’t think so.” So I went in and kissed my sister and I left.
The majority opinion holds that the testimony of K.L. as to the three other prior acts fails to reach the requisite standard of sufficient similarity and is only evidence of Crist’s character. I disagree with this analysis.
The showing of a pornographic magazine to K.L., then a thirteen-year-old girl, stating that he was “going to get her [K.L.] drunk and take advantage of her” and telling her to take her clothes off and put on a nightgown are indeed subtle forms of grooming a child for an act of sexual abuse. The sexual assault to which K.L. testified Crist subjected her followed very closely after his three other acts grooming K.L. for the sexual assault that followed.
If, as the majority opinion holds, the actual sexual assault upon K.L. is admissible as a prior act of Crist, then certainly these other *450 three prior acts are also admissible as a grooming of K.L. for the sexual assault upon her, and cannot be held as not similar. These acts of grooming of K.L. are not only similar to the actual sexual assault committed upon her but are a prelude and inextricably a part of Crist’s plan and sexual assault.
Crist cannot complain that the admission of the testimony concerning the other three prior acts prejudiced him. He was charged in Count Two with sexual abuse against B.C., an eight-year-old boy, and the jury found him not guilty on this count. In Count Three, Crist was charged with sexual assault upon J.S., a fourteen-year-old girl, and the jury hung on this charge — eight for guilty and four for innocent. Count Three was thereafter dismissed.
I would affirm the jury conviction and sentence imposed by the District Court.